IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| FLIX BREWHOUSE TEXAS V LLC, | § | Case No. 21-30526-hcm |
| | § | Chapter 11 |
| Debtor. | § | |

**ROP ARTCRAFT, LLC'S MOTION FOR ORDER CONFIRMING THE AUTOMATIC
STAY DOES NOT APPLY, OR, IN THE ALTERNATIVE, MOTION FOR RELIEF
FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(d)**

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

Comes now ROP Artcraft, LLC ("ROP"), a creditor and party in interest herein, by and

through its attorneys of record, and files its Motion for Order Confirming the Automatic Stay

Does Not Apply, or, In the Alternative, Motion for Relief from Automatic Stay Pursuant to 11

U.S.C. Section 362(d) (the "Motion for Relief"), and would respectfully show the Court as

follows:

**I.**
**Factual & Procedural Background**

1.      This Motion is brought pursuant to Rules 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure to confirm that the automatic stay provided by 11 U.S.C. §362 does not

apply to ROP's rights to take possession of the Flix Brewhouse theater located in El Paso, Texas,

or, alternatively, to obtain relief from the automatic stay provisions of 11 U.S.C. Section 362.

2.      This Court has jurisdiction over this contested matter pursuant to 28 U.S.C.

§§1334 and 157, and 11 U.S.C. §§361-363 as well as under 11 U.S.C. §365.

3.      Flix Brewhouse Texas V LLC (the "Debtor") initiated this proceeding by filing its

Petition for Relief under Chapter 11 of the United States Bankruptcy Code on July 12, 2021, in

the United States Bankruptcy Court for the Western District of Texas, El Paso Division (the

"Petition Date").

4.      The Debtor is a special purpose entity whose only assets are the leased premises that are the subject of this Motion.

5.      The automatic stay does not apply as to ROP's right of possession of the leased premises that are the subject of this Motion for the reasons listed herein.

6.      ROP would show the Court that prior to the Petition Date, the Debtor was a party to a Commercial Real Estate Lease dated February 14, 2018 by and between Flix Brewhouse Texas V LLC and ROP Artcraft, LLC (the "Lease"). The nonresidential real property is located in the West Towne Marketplace in El Paso, Texas (the "Leased Premises"). The Leased Premises is utilized as a movie theater known as Flix Brewhouse ("Flix Brewhouse").

7.      The Lease was guaranteed by Flix Entertainment, LLC (the "Corporate Guarantor" or "Flix") and Allan L. Reagan (the "Personal Guarantor").

8.      The initial term of the Lease was for 180 months and the initial base minimum rent was $74,270.83 per month.

9.      Section 16 of the Lease describes events of tenant default and landlord's remedies. Section 16.1 and 16.2A and B read as follows:

<u>ARTICLE XVI DEFAULT AND REMEDIES</u>

<u>16.1</u>   Each of the following acts or omissions of Tenant or occurrences shall constitute an "Event of Default":

A.   Failure or refusal by Tenant to timely pay Rent or other payments hereunder within ten (10) days of the due date thereof (it being understood that such ten days does not in any way constitute a "grace period" from the assessment of any late charges or interest accruals on delinquent Rent provided herein). Such a failure or refusal shall be known specifically as an "Event of Monetary Default." On a one-time only basis per Lease Year upon the occurrence of an Event of Monetary Default, Tenant may cure such default within five days of its receipt of Notice from Landlord, by paying to Landlord all delinquent Rent and administrative fees plus an additional late fee equal to 5% of the delinquent Rent amount.

B.   Failure to perform or observe any other covenant or condition of this Lease by Tenant to be performed or observed prior to the expiration of a period of thirty (30) days following written notice to Tenant of such failure, or such longer period as may be reasonably necessary provided that a cure is commenced within said thirty (30) days and thereafter prosecuted diligently until completion.

C.   Desertion or vacation of the Premises or any significant or substantial portion thereof, other than as may be provided herein.

D.   The filing or execution or occurrence of any of the following with respect to either Tenant or any guarantor of this Lease: a petition in bankruptcy or other insolvency proceeding by or against them; or a petition or answer seeking relief under any assignment for the benefit of creditors or composition; or a petition or other proceeding by or against them for the appointment of a trustee, receiver or liquidator of them or any of their property; or a proceeding by any governmental authority for the dissolution or liquidation of them.

16.2   This Lease and the Term and estate hereby granted and the demise hereby made are subject to the limitation that if and whenever any Event of Default persists beyond all applicable cure periods, Landlord may, at its option, in addition to all other rights and remedies given hereunder or by law or equity, and subject to applicable law, do any one or more of the following:

A.   Terminate this Lease, in which event Tenant shall immediately surrender possession of the Premises to Landlord.

B.   Enter upon and take possession of the Premises and expel or remove Tenant and any other occupant therefrom, with or without terminating the Lease.

10.     As can be seen from the language quoted above, ROP is only required to provide notice and an opportunity to cure for violation of Sections 16.1A and 16.1B.

11.     Beginning in March 2020, the Debtor defaulted under the terms of the Lease and stopped paying the rent due under the Lease.

12.     In the spring of 2020, in violation of the provisions of Section 16.1C of the Lease, the Debtor shut down operations of Flix Brewhouse due to, among other reasons, governmental restrictions imposed by the coronavirus pandemic.

13.     On July 28, 2020, ROP's attorneys sent the Debtor a notice of default under the Lease.  A true and correct copy of the July 28, 2020 notice of default is attached hereto as Exhibit 1. The Debtor did not cure any of the defaults described in the letter.

14.     In addition, on July 30, 2020, ROP's attorneys made formal written demand upon the Corporate Guarantor and the Personal Guarantor to honor their obligations under their respective Guaranty Agreements and pay the sums due under the Lease.  The Corporate Guarantor and the Personal Guarantor failed and refused to pay the sums due under the Lease.

15.     The Lease was amended by a First Amendment to Commercial Real Estate Lease dated September 30, 2020, whereby ROP agreed to a rent deferment agreement with the Debtor (the "First Amendment to Lease").  A true and correct copy of the First Amendment to Lease is attached hereto as Exhibit 2.  The Debtor failed to meet its obligations under the rent deferment agreement and all past due rent and other payments became immediately due and payable.  The First Amendment to Lease states, in part, as follows:

> Upon a Deferment Termination Event the Rent Deferment Period will automatically end, without notice or opportunity to cure, Tenant will commence regular payments of Rent under the Lease and all Deferred Rent will be immediately due and payable.  In addition to the above, Landlord, in its sole discretion, may pursue all remedies under the Lease and at law or in equity.

16.     Pursuant to the terms of the First Amendment to Lease, upon the failure of the Debtor to comply with its terms, ROP was entitled to terminate the Lease without providing notice of a default and an opportunity to cure.

17.     ROP executed the First Amendment to Lease on October 19, 2020 and sent it by email to the Debtor.  The very next day, on October 20, 2020, Allan L. Reagan, the Personal Guarantor, filed for relief under Subchapter V of chapter 11 of title 11 of the United States Code under Case No. 20-11161 in Austin, Texas (the "Reagan Bankruptcy").  Pursuant to Section 16.1D of the Lease, this was a default for which ROP was not required to provide notice and an opportunity to cure.

18.     On January 12, 2021, ROP filed its Proof of Claim No. 11 in the Reagan

Bankruptcy reflecting that as of the date of filing his Chapter 11, Mr. Reagan, pursuant to his Guaranty Agreement, owed ROP the total amount of $3,750,801.80, which sum represented the past due rent at the time plus CAM, insurance and property taxes due in the amount of $493,701.80 plus $3,275,100.00 for three years' future rent due under the Lease.

19.    On March 22, 2021, Mr. Reagan filed his objection to ROP's Proof of Claim No. 11.

20.    On June 3, 2021, Mr. Reagan's Second Amended Plan of Reorganization was confirmed.

21.    Despite the fact that the Debtor had incurable defaults under the Lease (i.e., the vacation of the Leased Premises as well as the bankruptcy filing by Mr. Reagan), ROP kept in constant communication with Mr. Reagan regarding the possible chances of the Flix Brewhouse ever reopening and, if so, when.   The information provided by Mr. Reagan was almost universally negative and it was made clear by him that reopening was dependent upon the receipt by the Debtor of federal relief funds as well as a further modification to the Lease.

22.    On February 8, 2021, Mr. Reagan stated that Flix, until it received a Shuttered Venue Operations Grant ("SVOG"), lacked the capacity to fund the negative cash flow associated with reopening.

23.    On February 26, 2021, without any SVOG funds in hand, Mr. Reagan asked for an infusion of funds from the landlords as one option to reopen.  On that same date, Mr. Reagan reported that conventional private capital sources were closed.

24.    The parties even began to negotiate an amended Lease.  However, on April 1, 2021, Mr. Regan refused to execute a new guaranty which was a requirement of the Lease.  The parties have never agreed on the terms of a Second Amendment to Lease and the Debtor does not

have the ability to operate under the Lease much less cure the defaults under the Lease.

25.     On April 16, 2021, Mr. Reagan reported that SVOG program has serious problems and so Flix had applied for a second round Paycheck Protection Program ("PPP") loan in order to try to open two or three of its ten theaters.

26.     On May 2, 2021, Mr. Reagan reported that Flix still had not received federal funds and that, if it had the funds, Flix would be negotiating lease amendments and modifications with the landlords that were willing to do so.

27.     On or about May 11, 2021, still with no available federal relief funds, Mr. Reagan estimated that Flix Brewhouse would open within 45-60 days of the receipt of the SVOG funds.

28.     The other Flix entities or the parent corporation was able to borrow funds so that by the end of July 2021, Flix had opened three locations, although, the El Paso location was not one of them.

29.     By June 30, 2021, the parties had still not worked out the terms of a second lease amendment.

30.     On July 2, 2021, Mr. Reagan informed ROP that the reopening of the El Paso Flix Brewhouse was going to be postponed to a date uncertain as it did not have the funds to reopen.

31.     By letter dated July 6, 2021, ROP's attorneys sent the Debtor, by overnight mail on July 7, 2021, a notice of termination of Lease due to an Event of Default under the terms of the Lease.  A true and correct copy of the July 6, 2021 notice of termination of Lease is attached hereto as Exhibit 3.

32.     On Monday, July 12, 2021, ROP went to change the locks on the Leased Premises.  At that time, it found out that, without any agreement regarding a second amendment to the Lease or any attempt to cure the existing defaults, and without any notification of or plan

for reopening the Leased Premises, the Debtor had sent an individual to the Leased Premises to start brewing beer.

33.     On July 12, 2021, the Debtor filed this instant case.

34.     Subsequent to the filing, Debtor's counsel sent ROP counsel a letter dated July 12, 2021 asserting that this Chapter 11 had been filed, the Lease termination was not effective and that §362 prevented any future efforts by ROP to secure the Leased Premises. A true and correct copy of the July 12, 2021 letter is attached hereto as Exhibit 4.

35.     The Debtor did not have ROP's consent, post-termination, to enter the Leased Premises and its conduct constitutes a trespass.

36.     As of the Petition Date, the Debtor owed ROP the sum of $1,411,614.36.

37.     ROP is at risk of claims for the Debtor's use of the Leased Premises without compensation. The use of the brewery equipment has the potential to (a) cause damage to the Leased Premises, and (b) risk issues with the Texas Alcoholic Beverage Commission as ROP has no license to operate a brewery.

38.     Since the Debtor has continually stated that it does not have the funds to reopen the El Paso location, especially without further concessions from ROP, the only reason to send someone to brew beer _after_ the receipt of the notice of termination is to try to create some claim that this entity can satisfy the cure requirements of 11 U.S.C. §365 and reorganize.

## II.
## Argument & Authorities

39.     ROP respectfully asserts that the Lease was terminated appropriately prepetition. However, out of an abundance of caution, ROP hereby requests that the Court enter an order affirming that the Lease has been terminated and thus the automatic stay does not apply or,

alternatively, lifting the automatic stay for all purposes with respect to the Lease and the Leased Premises.

40.     Section 362(j) of the Bankruptcy Code provides that, "[o]n request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated." 11 U.S.C. § 362(j).

41.     Subsection 362(c)(1) of the Bankruptcy Code provides that the stay applies until property is no longer property of the estate. Further, section 362(b)(10) of the Bankruptcy Code exempts from the automatic stay "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10).

42.     It is a well settled principle of bankruptcy law that "an executory contract or lease validity terminated prior to the institution of a bankruptcy proceeding is not resurrected by the filing of the petition in bankruptcy and cannot, therefore, be included among the debtor's assets." *In re Triangle Laboratories, Inc.*, 663 F.2d 463, 467-68 (3d Cir. 1981). Moreover, section 362(b)(10) is not limited to instances in which the term of the lease has expired; rather, courts have consistently applied the provision to early termination of a breached lease pursuant to applicable non-bankruptcy state law and available contractual remedies, including payment default. *In re Policy Realty Corp.*, 242 B.R. 121, 127-28 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000); *see also Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 320 (7th Cir. 1995) (explaining that the Bankruptcy Code "draw[s] no meaningful distinction between 'unexpired' and 'terminated'" leases in the context of section 365); *In re Lakes Region Donuts*, LLC, 2014 WL 1281507, at *4 (Bankr. D.N.H. 2014); *see also In re Velo Holdings, Inc.*, 475 B.R. 367, 382

(Bankr. S.D.N.Y. 2012) (recognizing that properly invoked conditional limitation provisions may effectively terminate any executory contract prior to bankruptcy); *In re Turner*, 326 B.R. 563, 575 (Bankr. W.D. Pa. 2005); *see In re Erie Builders Concrete Co.*, 98 B.R. 737, 738 (Bankr. W.D. Pa. 1989) (stating "an expired non-residential lease is not property of the estate and that an extension of debtor's possession under § 105 may only be considered in exigent circumstances").

43.     Because the Lease was validly and unequivocally terminated on July 6, 2021, prior to the Petition Date, the Debtor has no appurtenant rights in either the Lease or the Leased Premises. Therefore, the Lease is not property of the Debtor's estate, 11 U.S.C. § 541(b)(2), and the automatic stay does not apply, 11 U.S.C. §§ 362(b)(10), (c)(1).

44.     Since full and final termination of the Lease, ROP began active mitigation efforts, which resulted in identification of one or more replacement tenants for the Leased Premises. The potential replacement tenants will need access to the location as soon as possible. On information and belief, ROP is at a significant risk of losing a replacement tenant if relief from this Court is not granted in short order, thus allowing the new tenant to begin operating since restrictions on business closures and social distancing continue to lift. Accordingly, time is of the essence, a circumstance made even more compelling because the Debtor's failure to pay rent prior to the Petition Date for over a year has caused ROP significant financial distress.

45.     The filing of the Chapter 11 by Mr. Reagan is a default under the Lease which cannot be cured by the Debtor.  Further, because of the Debtor's admitted inability to reopen the Flix Brewhouse, much less cure the monetary defaults, a successful reorganization is not possible and cause exists to lift the automatic stay and allow ROP to attempt to mitigate its ongoing losses.

## III.
## Relief Requested

46.     By this Motion, out of an abundance of caution, ROP respectfully requests that the Court enter an order, pursuant to §362(j) of the Bankruptcy Code, confirming that the automatic stay does not apply to the Leased Premises.

47.     To the extent that the automatic stay applies in this case, ROP believes that cause exists to lift the automatic stay to allow it to evict the Debtor from the Leased Premises.  Though the Lease was terminated prepetition by its terms, to ensure compliance with §362 of the Bankruptcy Code, ROP has filed this Motion for Relief.

48.     For the reasons set forth in this Motion for Relief, ROP requests that the automatic stay be lifted against the Debtor to allow it to evict the Debtor from the Leased Premises.

49.     To the extent the automatic stay of 11 U.S.C. §362 applies, grounds exist for granting relief from stay with respect to the Leased Premises.  First, the bankruptcy estate has no interest in the Leased Premises as it is not property of the estate.  Alternatively, the stay should be lifted for cause under § 362(d)(1), including the lack of adequate protection offered by the bankruptcy estate for any interest that it may have in the Leased Premises.  The Debtor continues to occupy the Leased Premises without any payment to ROP of the Debtor's contractual obligations.

50.     Pursuant to the terms of the Lease executed by the Debtor, ROP is additionally entitled to recover its reasonable and necessary attorney's fees incurred in prosecuting this matter.

51.     ROP further asks that the Court order that Rule 4001(a)(3) is not applicable so that ROP may immediately enforce and implement any order granting relief from stay resulting

from this Motion for Relief.

WHEREFORE, PREMISES CONSIDERED, ROP Artcraft, LLC respectfully requests

the Court enter an Order upon notice and hearing:

(a)     Confirming that the automatic stay as it pertains to Flix Brewhouse Texas V LLC does not apply, or, alternatively;

(b)     To the extent that the automatic stay applies, lifting the automatic stay as to the Debtor to permit ROP to proceed with the eviction of the Debtor from the real property and improvements located at the West Towne Marketplace in El Paso, Texas and described herein as Flix Brewhouse;

(b)     Entering an Order which is effective upon entry and is not subject to the stay provided by Bankruptcy Rule 4001(a)(3); and

(c)     Providing ROP such other and further relief as the Court deems appropriate.

Dated this the ___16___ day of July, 2021.

Respectfully submitted,

**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 N. Mesa Street
El Paso, Texas  79912
(915) 545-1133
(915) 545-4433 (Fax)

By:_____
    Harrel L. Davis III
    State Bar No. 05567560
    hdavis@eplawyers.com
    Attorneys for ROP Artcraft, LLC

## CERTIFICATE OF SERVICE

I certify that on the _16_ day of July, 2021, a true and correct copy of the above and foregoing was served upon the attached list of parties via electronic means as listed on the court's ECF noticing system or by regular first-class mail:

_____
Harrel L. Davis

Label Matrix for local noticing
0542-3
Case 21-30526-hcm
Western District of Texas
El Paso
Fri Jul 16 09:55:14 CDT 2021

Flix Brewhouse Texas IV LLC
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

1570 Cinema Services LTD
224 Pine Road
Kemah, TX 77565-2315

4 Over International LLC
1225 Los Angeles Street
Glendale, CA 91204-2403

ACC Business
P.O. Box 105306
Atlanta, GA 30348-5306

Airgas International Carbonation
2530 Sever Road
Suite 300
Dallas, TX 75373-0001

Allan L. Reagan
2000 S. IH-35, Suite Q11
Round Rock, TX 78681-6942

CineVizion LLC
5301 Melrose Avenue
Suite B-210
Los Angeles, CA 90038

Cinema Breweries Inc
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Country Malt
P.O. Box 51602
Los Angeles, CA 90051-5902

Davis Wright Tremaine LLP
Attention: J. Riley Lagesen
1300 SW Fifth Avenue
Suite 2400
Portland, OR 97201-5610

Denton County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

Digital Light Source LLC
2768 Santa Ynez Avenue
Simi Valley, CA 93063-2392

Direct TV
P.O. Box 105249
Atlanta, GA 30348-5249

Ecolab Institutional
P.O. Box 70343
Chicago, IL 60673-0343

Ecolab Pest Elimination
26252 Network Place
Chicago, IL 60673-1262

Edward Don & Company
2562 Paysphere Circle
Chicago, IL 60674-0001

Efrains Janitorial Services
11993 Braveheart
El Paso, TX 79936-0370

El Paso Disposal
5539 El Paso Dr
El Paso, TX 79905-2907

El Paso Electric
P.O. Box 982
El Paso, TX 79960-0982

El Paso Tax Assessor-Collector
P.O. Box 2992
El Paso, TX 79999-2992

El Paso Water
P.O. Box 511
El Paso, TX 79961-0511

Flix Brewhouse LLC
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Flix Brewhouse Texas II LLC
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Flix Brewhouse Texas IV
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Flix Entertainment LLC
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Grandstand
P.O. Box 3497
Wichita, KS 67201-3497

Green Arrow Environmental Services
7651 Esters Boulevard
Suite 200
Irving, TX 75063-4034

Homefield Grill
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

IFC Films LLC
11 Penn Plaza
New York, NY 10001-2006

Internal Revenue Service
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

Irma Najera
c/o Huyhn Law Firm
1742 N. Zaragoza Rd. Ste A
El Paso, TX 79936-7970


Jesse's Window Cleaning
6527 Cheyenne Trail
El Paso, TX 79925-2133

Knife Guys Inc
3412 Stanford Drive
Albuquerque, NM 87107-2020

L&F Distributors
6949 Market Avenue
El Paso, TX 79915-1111


Loomis
Dept 0757
Po Box 120757
Dallas, TX 75312-1757

McMaster-Carr
P.O. Box 7690
Chicago, IL 60680-7690

Nova Clean
5641 Valley Elder
El Paso, TX 79932-4401


Office Depot
Po Box 660113
Dallas, TX 75266-0113

PyroCom Systems
820 Kastrin
El Paso, TX 79907-2724

ROP Artcraft LLC
106 Mesa Park Drive
El Paso, TX 79912-6154


Rodriguez Produce Inc
125 N Stevens St
El Paso, TX 79905-1228

Secured Retail Networks
9963 Muirlands Blvd
Irving, CA 92618-2508

Shoes For Crews LLC
P.O. Box 734176
Chicago, IL 60673-4176


Swank Motion Pictures
2844 Paysphere Circle
Chicago, IL 60674-0001

Sysco New Mexico
601 Comanche Rd NE
Albuquerque, NM 87107-4103

Sysco Texas
1260 Schwab Road
New Braunfels, TX 78132-5155


Texas Alcoholic Beverage Commission
Licenses and Permits Division
P.O. Box 13127
Austin, TX 78711-3127

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Texas Gas Service Company
P.O. Box 219913
Kansas City, MO 64121-9913


Texas Taxing Authorities
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

Texas Workforce Commission
TWC Building - Regulatory Integrity Div
101 East 15th Street
Austin, TX 78778-0001

Trane US Inc
P.O. Box 845053
Dallas, TX 75284-5053


United States Trustee
615 E. Houston, Suite 533
San Antonio, TX 78205-2055

United States Trustee - EP12
U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Ushio America Inc
P.O. Box 7474
Chicago, IL 60677-0001


Venue Valet CC LLC
6601 Vaught Ranch Rd
Suite 101
Austin, TX 78730-2316

Vistar Corporation
P.O. Box 951080
Dallas, TX 75395-1080

Williamson County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

Woodward Center Inc
2000 S Interstate 35
Ste Q11
Round Rock, TX 78681-6942

Rachael L. Smiley
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway
Suite 600
Plano, TX 75093-4820

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Texas Comptroller of Public Accounts
P.O. Box 13528 Capitol Station
Revenue Accounting Divison - Bankruptcy
Austin, TX 78711

End of Label Matrix
Mailable recipients     61
Bypassed recipients      0
Total                   61

# Gordon Davis Johnson & Shane P.C.

ATTORNEYS AND COUNSELORS AT LAW

**Harrel L. Davis III**
LICENSED IN TEXAS AND NEW MEXICO
*BOARD CERTIFIED BUSINESS BANKRUPTCY LAW*
*TEXAS BOARD OF LEGAL SPECIALIZATION*

Mailing Address:
Post Office Box 1322
El Paso, Texas 79947-1322
4695 North Mesa
El Paso, Texas 79912
Telephone (915) 545-1133
Telefax (915) 545-4433
Email hdavis@eplawyers.com
Web www.eplawyers.com

July 28, 2020

*Via FedEx and*
*Via Certified Mail, Return Receipt Requested*

Flix Brewhouse TX V LLC
2000 S. IH-35, Suite Q11
Round Rock, Texas 78681
Attn.: Allan L. Reagan

Re:     Lease Agreement dated February 14, 2018 (the "Lease") between ROP Artcraft
LLC ("Landlord") and Flix Brewhouse TX V LLC ("Tenant") – **NOTICE OF
DEFAULT, DEMAND FOR PAYMENT OF RENT, NOTICE OF INTENT
TO TERMINATE LEASE AND EXERCISE OF OTHER REMEDIES
UNDER LEASE**

Dear Mr. Reagan:

This firm represents the Landlord. This letter is sent to you as Tenant under the Lease.

Article IV of the Lease requires that you pay Rent and all amounts due under the Lease
on the first day of the month. You have defaulted under the Lease by your failure to make
payments under the Lease for Rent and/or other associated late fees. Pursuant to Article XVI of
the Lease, it is a default and breach of the Lease if Tenant fails to timely pay Rent under the
Lease.

Accordingly, this letter serves as notice of default under the Lease. As of the date of this
letter, you owe Landlord $398,455.21 representing Rent (including late fees and attorneys' fees
of $500) for April 1, 2020 through July 1, 2020.  This amount will increase to $488,930.21 on
August 1, 2020 (which amount includes late fees and attorneys' fees of $500).  Demand is
hereby made for payment. **Unless you pay in full all amounts due under the Lease within 10
days of this letter, Landlord may exercise its rights under the Lease, including, but not
limited to:**

1.      **Terminating the Lease and pursuing any deficiency for the remaining term;**

2.      **Pursuing damages for all amounts due under the Lease; and**

3.      **Exercising its rights to enter into the Premises and lock out the Tenant or
any other occupant of the premises.**

{9632.41/HDAV/06761240.1}



EXHIBIT

**ARTICLE XVI OF THE LEASE OUTLINES REMEDIES AVAILABLE TO THE LANDLORD IN THE EVENT OF DEFAULT BY TENANT, INCLUDING COLLECTING PAST DUE AMOUNTS UNDER THE LEASE, TERMINATING THE LEASE, LOCKOUT, AND PURSUING COSTS, EXPENSES AND ATTORNEY'S FEES. THIS LETTER SERVES AS NOTICE OF LANDLORD'S RIGHT TO PURSUE SUCH REMEMDIES UNDER THE LEASE.**

Landlord also reserves the right to pursue all of its remedies under the Lease. This letter is sent on behalf of Landlord and Landlord does not waive any other defaults by Tenant, if any, that may exist under the Lease now or in the future.

**Communications concerning this letter should be sent to Harrel Davis, 4695 North Mesa, El Paso, Texas 79912.**

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

If you have questions, please contact the undersigned.

Very truly yours,

GORDON DAVIS JOHNSON & SHANE P.C.

By: _____
Harrel L. Davis III

HLD/vr
cc: *Via Certified Mail, Return Receipt Requested
And Regular U.S. Mail*
Flix Entertainment LLC
2000 S. IH-35, Suite Q11
Round Rock, Texas 78681

*Via Certified Mail, Return Receipt Requested
And Regular U.S. Mail*
Allan L. Reagan
2000 S. IH-35, Suite Q11
Round Rock, Texas 78681

Client

{9632.41/HDAV/06761240.1}

## FIRST AMENDMENT TO COMMERCIAL REAL ESTATE LEASE

This First Amendment (the "Amendment") to that certain Shopping Center Lease dated February 14, 2018, (the "Lease") by and between ROP Artcraft LLC, a Texas limited liability company ("Landlord") and FLIX BREWHOUSE TX V LLC, a Texas limited liability company ("Tenant"), made and entered into as of the 30th day of September 2020. Definitions used in this Amendment not otherwise defined shall have the meanings given to same in the Lease.

### RECITALS

A.    The effects of the COVID-19 global pandemic (the "Pandemic") declared by the World Health Organization on March 11, 2020 led to the issuance of governmental orders, laws or regulations applicable to the Premises and/or the Center, such as (by example only) limiting occupancy in a given space (e.g. an auditorium) within the Premises, to mandating that Tenant may not conduct any of its Permitted Use within the Premises ("Government Restrictions").

B.    Due to Governmental Restrictions, Tenant requested a temporary full and/or partial deferment of Tenant's Rent obligations for the Rent Deferment Period, defined below.

C.    Landlord has agreed to this Amendment subject to and conditioned on: (i) Tenant's continued performance under the Lease, except as amended by this Amendment; (ii) the terms of this Amendment; and (iii) the separate ratification and modification of the Corporate Guaranty and Personal Guaranty.

D.    As of the date of this Amendment, Tenant is delinquent in payment of the Rent called for under the Lease in the amounts shown on Schedule 1, attached to this Amendment.

In exchange for good and valuable consideration, the receipt and sufficiency of which is acknowledged and accepted, Landlord and Tenant hereby amend the Lease as follows:

1.    **Extension of Lease Term** Landlord shall have the option to extend the Original Term of the Lease for an additional nine (9) months which, if exercised, would extend the expiration of the Original Term of the Lease to April 30, 2035. The period between August 1, 2034 to April 30, 2035 will be the "Extended Original Term". Landlord may exercise the option to extend the Original Term for the Extended Original Term by notifying Tenant in writing on or before January 1, 2023 (the "Extension Notice"). Upon receipt of the Extension Notice from Landlord, the Original Term of the Lease will be automatically extended for the Extended Original Term.    If Landlord fails to deliver the Extension Notice on or before January 1, 2023, the Original Term will expire on July 31, 2034 and Tenant agrees to pay all Deferred Rent to Landlord prior to expiration of the Original Term.

2.    **Security Deposit.**  Landlord has applied the Deposit in the amount of $148,542 under the Lease against Base Minimum Rent due for April 2020 and May 2020 and a portion of June 2020.

3.    **Rent Deferment Period**.  As used herein the "Rent Deferment Period" will mean the

{9632.41/TJOH/06751981.15}6}Page 1 of 8

EXHIBIT

2

period beginning April 1, 2020 and ending the earlier of a Deferment Termination Event or expiration of the Original Term provided for in the Lease. "Deferred Rent" shall equal 100 % of the Rent (as defined in Section 4.1 of the Lease) for the Rent Deferment Period (without taking into account deferrals under this Amendment) less the total of Rent actually paid to Landlord by Tenant during the Rent Deferment Period, including the application of the Security Deposit. For the avoidance of doubt, all Rent called for under Section 4.1 of the Lease (without taking into account this Amendment) not paid during the Rent Deferment Period shall be included as "Deferred Rent". As used herein, a "Deferment Termination Event" means (i) an Event of Default by Tenant under the Lease; (ii) failure by Tenant to perform obligations under this Amendment; or (iii) the filing or execution or occurrence of any of the following with respect to either Tenant or any guarantor of this Lease: a petition in bankruptcy or other insolvency proceeding by or against them; or a petition or answer seeking relief under any assignment for the benefit of creditors or composition; or a petition or other proceeding by or against them for the appointment of a trustee, receiver or liquidator of them or any of their property; or a proceeding by any governmental authority for the dissolution or liquidation of either Tenant or any guarantor of this Lease. Upon a Deferment Termination Event the Rent Deferment Period will automatically end, without notice or opportunity to cure, Tenant will commence regular payments of Rent under the Lease and all Deferred Rent will be immediately due and payable. In addition to the above, Landlord, in its sole discretion, may pursue all remedies under the Lease and at law or in equity. Landlord may also enforce the Corporate Guaranty and Personal Guaranty either contemporaneously or in a separate action without joinder of Tenant.

4. **Rent Modification.** During the Rent Deferment Period, Tenant agrees to pay Base Minimum Rent and Additional Rent as follows:

A. *April 1, 2020 through December 31, 2020:* In lieu of any unpaid Base Minimum Rent and Additional Rent provided in the Lease for the period April 1, 2020 through December 31, 2020 (the "2020 Part Year") Tenant shall pay the sum of (i) $15,000.00, prior receipt of which Landlord hereby acknowledges; (ii) Percentage Rent equal to thirteen and one half percent (13.5%) of gross box office sales from or pertaining to the Premises during the 2020 Part Year, as confirmed by a verified Tenant sales report; and (iii) Percentage Rent equal to ten percent (10%) of Tenant's gross "Other Sales" (principally food and beverage) during the 2020 Part Year. Other Sales means Gross Sales as defined in the Lease, less gross box office sales. Percentage Rent payments shall be paid to Landlord on or before the tenth day of each month during the 2020 Part Year, beginning with Percentage Rent arising April 1 through September 30, 2020 due on October 19, 2020. Percentage Rent remittances shall be accompanied by a sales report in form reasonably satisfactory to Landlord and such other supporting documentation as Landlord may reasonably require. Landlord and Tenant agree to waive the reconciliation of amounts paid by Tenant under Section 4.4 of the Lease against the actual amount due from Tenant for 2020 and periods prior to 2020.

B. *January 1, 2021 through June 30, 2021:* Tenant shall pay (i) fifty percent (50%) of the monthly Base Minimum Rent set forth in the Lease as originally scheduled for April 2020 through September 2020, plus (ii) monthly Additional Rent equal to an amount that is the greater of (i) the estimated installments for January through March 2020 as a non-

reconcilable sum stipulated by the parties hereto, or (ii) the amounts provided by the Lease.

C. *July 1, 2021 through December 31, 2021:* Tenant shall pay (i) seventy-five percent (75%) of the month Base Minimum Rent set forth in the Lease as originally scheduled for October 2020 through March 2021, plus (ii) Additional Rent equal to an amount that is the greater of (i) the estimated installments for January through March 2020 as a non-reconcilable sum stipulated by the parties hereto, or (ii) the amounts provided by the Lease.

D. *January 1, 2022 forward:* Tenant shall pay monthly **Base Minimum Rent** equal to the sum of (i) seventy-five percent (75%) of the Base Minimum Rent set forth in the Lease as originally scheduled from and after April 2021, adjusted annually, and (ii) Capitalized Rent as set forth in Section 4 below. Tenant shall pay monthly Additional Rent equal to an amount that is the greater of (i) the estimated installments for January through March 2020 as a non-reconcilable sum stipulated to by the parties hereto, or (ii) the amounts provided by the Lease.

E. Prior to a Deferment Termination Event, the Base Minimum Rent used to calculate Tenant's Base Minimum Rent under this Amendment for the Rent Deferment Period is set forth on Schedule 2. If a Deferment Termination Event occurs, Rent will retroactively be restored in the amount called for in the Lease without taking into account any deferment under this Amendment.

5. **Semi-Annual Percentage Rent.** In addition to the Rent provided in Section 4, above, During 2021, for each half year period, in addition to the amounts set forth above, Tenant shall pay percentage rent equal to nine percent (9%) of Gross Sales, less Base Minimum Rent paid for the same period ("2021 Percentage Rent"). Payment shall be due ten (10) days following the end of each semi-annual period (which periods end on June 30 and December 31).

6. **Capitalization of 2021 Pro-Forma Percentage Rent.** 2021 Percentage Rent shall be recalculated as if Base Minimum Rent for *all* of 2021 had been seventy-five percent (75%) of the previously scheduled Base Rent for April 2020 through March 2021, two-thirds of which shall then be added to adjusted Base Rent for all periods beginning on and after January 1, 2022 ("Capitalized Rent"). In order to clarify the intent of this Section 6, Landlord and Tenant have attached Schedule 3 reflecting the intended calculation and application of Capitalized Rent. If there is a conflict between Schedule 3 and this Section 6, Schedule 3 shall control.

7. **On-going Percentage Rent.** For 2022 and all annual periods thereafter, Percentage Rent shall be calculated as nine percent (9%) of Gross Sales, less Base Minimum Rent paid for the same period attributable to the Gross Sales period. Payment shall be made when and as due as provided by the Lease ten (10) days following the end of each semi-annual period.

8. **Option Period Rents.** Base Rent for all option periods set forth in the Lease shall remain unchanged.

9. **Ratification of Guaranty.** Corporate Guarantor and Personal Guarantor (collectively "Guarantors") join in the execution of this Amendment solely to evidence Guarantor's consent to



the terms hereof, to confirm their continuing obligations under the terms of the Corporate Guaranty and Personal Guaranty, as applicable, and to acknowledge that without such consent and confirmation, Landlord would not enter into this Amendment or otherwise consent to the deferment of Rent. By execution hereof, the Corporate Guarantor expressly consents to the terms and conditions of this Amendment and ratifies the Corporate Guaranty as remaining in full force and effect. By execution hereof, the Personal Guarantor expressly consents to the terms and conditions of this Amendment, ratifies the Personal Guaranty and extends the Guaranty Term to expire the 45 Months after the Rent Commencement Date. The provisions of this paragraph shall control over any inconsistent provision set forth in the Corporate Guaranty and Personal Guaranty. Except as expressly modified by this paragraph, the terms of the Corporate Guaranty and Personal Guaranty continue in full force and effect pursuant to their terms.

**10. Reinstatement of Obligations.** The obligations of Tenant under the Lease and this Amendment and Guarantors under the Corporate Guaranty and Personal Guaranty, as applicable, shall be reinstated and continued in full force and effect if at any time (a) any payment received by Landlord in satisfaction of obligations under the Lease, this Amendment, Corporate Guaranty or Personal Guaranty is invalidated, declared to be fraudulent, preferentially set aside or required to be repaid to the person making such payment, and (b) such payment is received by such person or such person's estate in a bankruptcy or similar proceeding.

**11. Landlord Recapture.** Landlord shall be permitted to procure a replacement tenant that is willing to pay Landlord more than the Base Minimum Rent as recalculated herein (a "Replacement Tenant"). If Landlord procures a Replacement Tenant, that Landlord is willing to accept, Landlord shall provide Tenant with written notice (the "Replacement Notice") that Landlord has obtained a Replacement Tenant. Tenant shall then have 30 days after receipt of the Replacement Notice (the "Tenant Election Period") to make a determination as to whether Tenant (i) will agree to vacate the Premises in favor of the Replacement Tenant; or (ii) continue under the terms of the Lease and pay Landlord the lower of: (a) the comparable rent associated with the Replacement Tenant; or (b) the Base Minimum Rent and Additional Rent as set forth in the original Lease prior to this Amendment. If Tenant elects the option under Section 11 (i), above, Landlord will have one hundred twenty (120) days after the Tenant Election Period to negotiate and enter into a lease with the Replacement Tenant and provide Tenant written notice of the new lease with Replacement Tenant (the "New Lease Notice"). Thereafter, Tenant will have 30 days abated rent after receipt of the New Lease Notice to cease operations and de-fixture and return the Premises to the condition required pursuant to the Lease. If Tenant If Tenant elects the option under Section 11 (ii), above, Tenant will commence payment of the amounts called for under Section 11 (ii) and the Lease will continue. Tenant's failure to make an election during the Tenant Election Period, will be deemed and election under Section 11 (i). Landlord's right to procure a Replacement Tenant and deliver one or more Replacement Notice will be a continuing right and will not be a one-time right as long as any Deferred Rent is outstanding under this Lease.

**12. Status Confirmation.** By execution of this Amendment, Tenant, individual Guarantor and Corporate Guarantor each agree Landlord is not in default of any terms of the Lease and, to Tenant's knowledge, no event has occurred that with the giving of notice and passage of time would constitute an Event of Default by Landlord. By execution of this Amendment, Landlord agrees that, execution of this Amendment by Tenant, individual Guarantor and Corporate

Guarantor, and payment of the $15,000.00 to Landlord as called for in Section 4 A (i) Tenant, individual Guarantor and / or Corporate Guarantor will satisfy the existing default under the Lease. In the event of a Deferment Termination Event, Landlord in its sole discretion may provide notice to Tenant that the Rent Deferment Period has terminated, in which instance, Section 3 of this Agreement shall control.

**13.     Governing Law; Venue.** This Amendment is governed by and must be construed in accordance with the laws of the State of Texas, without regard to choice-of-law or conflicts of laws rules. Venue for any action related to this Amendment shall be exclusively in the state and federal courts of El Paso County, Texas.

**14.     Miscellaneous.**

a.      All of the covenants of the Lease, as amended hereby, shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns.

b.      Except as expressly provided herein, the Lease shall remain in full force and effect under the terms, provisions and conditions thereof, without modification.

c.      This Amendment may be executed in one or more counterparts, each of which may be assembled so as to constitute one (1) original document. PDF and DocuSigned signatures shall constitute originals for purposes of this Amendment.

d.      The parties agree that this Amendment shall not be construed against any party based on the drafter of this Amendment and is considered mutually drafted by the parties. No modification of this Amendment will be binding on either party unless reduced to writing and signed by the party to be bound.

e.      Should any provision of this Amendment be deemed invalid or unenforceable by law or a court of competent jurisdiction, the unenforceable provision shall be deemed stricken from this Amendment and the remaining terms and conditions of this Amendment and the Lease shall remain of full force and effect.

*[Signatures on Following Page]*



TENANT:            **FLIX BREWHOUSE TX V LLC,**
                   A Texas limited liability company

                   By: Hospitality Investors Inc.
                   Its: Manager

                   By: _____
                        Allan L. Reagan, President

LANDLORD:          **ROP ARTCRAFT LLC,**
                   A Texas limited liability company

                   By: _____

                   Its: _____

The undersigned Guarantor has executed and joined the Amendment to Commercial Lease February 14, 2018 pursuant to and in accordance with paragraph 6 above

FLIX ENTERTAINMENT, LLC,
a Texas limited liability company

By: Hospitality Investors Inc.
Its: Manager

By: _____
       Allan L. Reagan, President

Date: 9-30-2020

**On this** 30 **day of** September **2020,** before me personally appeared Allan L. Reagan, CEO of Flix Entertainment, LLC to me known to be the person described in and who executed the foregoing instrument and acknowledged before me that they executed the same as their free act and deed.

JENNIFER L. BURNS
Notary Public, State of Texas
Comm. Expires 07-31-2023
Notary ID 132109680

Sign Name: _____
Print Name: Jennifer L Burns
Notary Public, State of Texas
County of Williamson
My Commission Expires: 7/31/2023
Acting in the County of Williamson

The undersigned Guarantor has executed and joined the Amendment to Commercial Lease February 14, 2018 pursuant to and in accordance with paragraph 6 above



ALLAN L. REAGAN

ACKNOWLEDGMENT

STATE OF Texas )
)ss.
COUNTY OF Williamson )

On this 30 day of September, 2020, before me personally appeared Allan L. Reagan, to me known to be the person described in and who executed the foregoing instrument and acknowledged before me that they executed the same as their free act and deed.

JENNIFER L. BURNS
Notary Public, State of Texas
Comm. Expires.07-31-2023
Notary ID 132109680

Sign Name: _____
Print Name: Jennifer L. Burns
Notary Public, State of Texas
County of Williamson
My Commission Expires: 7/31/2023
Acting in the County of Williamson

## FLIX EL PASO RENT AND PERCENTAGE RENT CALCULATIONS*

*In addition to Base Rent and Percentage Rent, Tenant will pay Additional Rent (i.e., CAM & Taxes) beginning January 1, 2021 and continuing through the remainder of the Lease

| 38,775 size | | Rent/sf | $ | 23.00 |

| Contract Rent | Base Min Rent | | 50% | | 75% |
|---|---|---|---|---|---|
| Annual | $ 891,825.00 | $ | 445,912.50 | $ | 668,868.75 |
| Monthly | $ 74,318.75 | $ | 37,159.38 | $ | 55,739.06 |

**Illustrative Gross Percentage Rent**

| | Gross Sales | | 9% | | Semi-Annual |
|---|---|---|---|---|---|
| 9% of gross revenue less rent | $ 9,000,000.00 | $ | 810,000.00 | $ | 405,000.00 |
| | $ 8,000,000.00 | $ | 720,000.00 | $ | 360,000.00 |
| | $ 7,000,000.00 | $ | 630,000.00 | $ | 315,000.00 |
| | $ 6,000,000.00 | $ | 540,000.00 | $ | 270,000.00 |
| | $ 5,000,000.00 | $ | 450,000.00 | $ | 225,000.00 |
| | $ 4,000,000.00 | $ | 360,000.00 | $ | 180,000.00 |

**2021 Illustrative Percentage Rent (Assume $3.5M gross sales Jan-Jun 2021 and $4.5M gross sales Jul-Dec**

| | 2021 J-J 50% | | 2021 J-D 75% | | Year Total |
|---|---|---|---|---|---|
| Illustrative gross sales | $ 3,500,000.00 | $ | 4,500,000.00 | $ | 8,000,000.00 |
| | | | | | |
| Gross percentage rent | $ 315,000.00 | $ | 405,000.00 | $ | 720,000.00 |
| Adj. Rent Paid | $ 222,956.25 | $ | 334,434.38 | $ | 557,390.63 |
| % Rent Payable | $ 92,043.75 | $ | 70,565.63 | $ | 162,609.38 |

**2021 Pro-Forma Percentage Rent Capitalized Into 2022**

| | Lookback | | 2021 Full Year | | | |
|---|---|---|---|---|---|---|
| Illustrative gross sales | | $ | 8,000,000.00 | | | |
| | | | | | | |
| Gross percentage rent | | $ | 720,000.00 | | | |
| Pro-forma rent (75% of prior contract rent) | | $ | 668,868.75 | 66.67% | | Per Month |
| Pro-forma net percentage rent | | $ | 51,131.25 | $ 34,087.50 | $ | 2,840.63 |

*Added to Base Rent for 2022 & thereafter*

**2022 Illustrative Percentage Rent Example A ($4.0M gross sales Jan-Jun 2021 and $3.75M gross sales Jul-Dec)**

| | 2022 J-J | | 2022 J-D | | Year Total | | |
|---|---|---|---|---|---|---|---|
| Illustrative gross sales | $ 4,000,000.00 | $ | 3,750,000.00 | $ | 7,750,000.00 | | |
| | | | | | | | |
| Gross percentage rent | $ 360,000.00 | $ | 337,500.00 | $ | 697,500.00 | | |
| Adj. Base Rent Paid | $ 351,478.13 | $ | 351,478.13 | $ | 702,956.25 | 66.67% | Per Month |
| % Rent Payable | $ 8,521.87 | $ | - | $ | 8,521.87 | $ 5,681.25 | $ 473.44 |

*Added to Base Rent for 2023 & thereafter*

**2022 Illustrative Percentage Rent Example B ($4.5M gross sales Jan-Jun 2021 and $5.0M gross sales Jul-Dec)**

| | 2022 J-J | | 2022 J-D | | Year Total | | |
|---|---|---|---|---|---|---|---|
| Illustrative gross sales | $ 4,500,000.00 | $ | 5,000,000.00 | $ | 9,500,000.00 | | |
| | | | | | | | |
| Gross percentage rent | $ 405,000.00 | $ | 450,000.00 | $ | 855,000.00 | | |
| Adj. Base Rent Paid | $ 351,478.13 | $ | 351,478.13 | $ | 702,956.25 | 66.67% | Per Month |
| % Rent Payable | $ 53,521.87 | $ | 98,521.87 | $ | 152,043.75 | $ 101,362.50 | $ 8,446.88 |

*Added to Base Rent for 2023 & thereafter*

# Gordon Davis Johnson & Shane P.C.
### ATTORNEYS AND COUNSELORS AT LAW

J. Morgan Broaddus III
Carla Canales
Cynthia Canales
Antonio J. Cifuentes
Harrel L. Davis III*
John M. Dickey*
Robert V. Gibson

C. Michael Ginnings
Patrick R. Gordon
Timothy D. Johnson*
Michael G. McLean*
Joshua F. Rhoads*
Michael J. Shane*
Joshua W. Snider*
Ignacio Troncoso

Mailing Address:
Post Office Box 1322
El Paso, Texas 79947-1322
4695 North Mesa
El Paso, Texas 79912

Telephone (915) 545-1133
Telefax (915) 545-4433
Email info@cplawyers.com
Web www.cplawyers.com

*Licensed in Texas and New Mexico

July 6, 2021

**FEDERAL EXPRESS PRIORITY OVERNIGHT**

Flix Brewhouse TX V, LLC
2000 South IH 35, Suite Q-11
Round Rock, Texas 78681
Attn:  Allan L. Reagan
512-643-4666

Flix Brewhouse Texas V, LLC
2000 South IH 35, Suite Q-11
Round Rock, Texas 78681
Attn:  Allan L. Reagan
512-643-4666

Re:  Commercial Real Estate Lease between ROP Artcraft, LLC as **"Landlord"** and Flix Brewhouse TX V LLC as **"Tenant"** dated February 14, 2018, for premises located at 1539 N. Desert Blvd., El Paso, Texas 79912 in the West Towne Marketplace, and which lease has been amended by First Amendment to Commercial Real Estate Lease dated September 30, 2020; which the lease and the amendment are hereinafter collectively referred to as the **"Lease"**

Dear Mr. Reagan:

Under the terms of the Lease an Event of Default has occurred and continued under the Lease. The Event of Default that occurred does not require any notice and cure period; accordingly, Landlord hereby terminates the Lease.

If you have any questions, please contact the undersigned.

Respectfully,

**GORDON DAVIS JOHNSON & SHANE PC**

By: _____
Timothy D. Johnson

TJOH/dlr
cc:  Adam Z. Frank
Stuart Shiloff
Beth Thomas
John Boomer
Gerald J. Rubin

**EXHIBIT**

3

{9632.41/TJOH/06832220.1}

# Sugar Felsenthal
# Grais & Helsinger LLP

Jack O'Connor
Direct: (312) 704-2178
Email: joconnor@sfgh.com

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office: (312) 704-9400
Fax: (312) 372-7951

www.SFGH.com

July 12, 2021

*Via email correspondence only*

ROP Artcraft LLC
c/o Gordon Davis Johnson & Shane P.C.
Attn: Timothy Johnson
tjohnson@eplawyers.com

**Re:** **Flix Brewhouse Texas V LLC Chapter 11 Bankruptcy Filing & Stay of Creditor Actions**

Counselor:

Please be advised that Flix Brewhouse Texas V, LLC ("***Debtor***") filed for chapter 11 bankruptcy protection today in the United States Bankruptcy Court for the Western District of Texas ("***Court***"), and the automatic stay under 11 U.S.C. § 362 is now in effect, staying all creditor actions against the Debtor—including all actions by your client, ROP Artcraft LLC ("***Landlord***"). A copy of the chapter 11 petition is enclosed with this correspondence.

Your July 6th letter to Mr. Reagan purporting to terminate the lease between the Debtor (as tenant) and Landlord for the premises located at 1539 N. Desert Blvd. in El Paso ("***Premises***") due to an unspecified Event of Default under the lease, which your letter further purports does not require any notice or cure period, was ineffective and did not result in an actual termination of the lease.

First, Debtor's alleged breach, whatever it is, is subject to valid defenses. Second, attempting to force Debtor to guess as to what Landlord believes constitutes an Event of Default that cannot be cured is itself in contravention of §§ 16.1 and 16.2 of the Lease. Further, Landlord is reminded that Comerica Bank may assert a security interest in the Debtor's property, in which case § 16.8 of the Lease requires that Landlord give notice of termination to Comerica and provide it with an opportunity to cure Debtor's non-Monetary Default within 30 days of Comerica's receipt of such notice before any purported termination could be effective.

Because the Debtor filed for chapter 11 protection today, the automatic stay prohibits Landlord from taking any further action against Debtor, the Premises, or any of Debtor's property unless and until Landlord obtains an order from the Court granting Landlord relief from the automatic stay to do so.



EXHIBIT

4

**Sugar Felsenthal
Grais & Helsinger LLP**

ROP Artcraft LLC
July 12, 2021
Page 2 of 2

The stay extends to prevent any actions by Landlord to enter the Premises and exercise control over or otherwise interfere with the Debtor's property and operations, including the Debtor's furniture, fixtures, and equipment at the Premises; and any individuals operating the Debtor's business at the Premises. Any willful violation of the automatic stay by the Landlord is in direct contravention of 11 U.S.C. § 362, entitling Debtor to seek actual damages—including costs, attorneys' fees, and punitive damages.

If you would like to discuss a more practical and economic solution for both our clients, please give me a call.

Very truly yours,

SUGAR FELSENTHAL GRAIS & HELSINGER LLP

By: _____
Jack O'Connor

cc: Jonathan Friedland